Good morning. Welcome to the first day of a four-day sitting here in Montgomery. Judges Brasher, Carnes, and I are pleased to be with you. Just before we get going, I'll give you a couple of rules of the road. Number one, most importantly, I think, please know that we've read your submissions. We've read the briefs, the cases, the statutes, the record material. So don't waste your own time, limited time, before us with a bunch of factual and procedural ramp-up. Not necessary. Just get to it. Whatever you think is going to win you the case, start telling us about it. Two, you'll understand the traffic light system. Green, go. Yellow, slow. Red, please stop. I'm not as good as I aspire to be at cutting people off in the middle of a sentence. But when you see the red light, just respect the court's time and wind up. All right. With that, we'll call the first case, which is United States v. Rowe, 23-10042. We've got Ms. Lowenthal here for the appellant and Ms. New here for the appellee. Ms. Lowenthal, looks like you've reserved four minutes for rebuttal. Correct. Very well. Fire away. Well, good morning. Cheryl Lowenthal, CJA counsel for the appellant, Charles Rowe. We're here today because Mr. Rowe is serving a sentence of 360 months with a presumptive release date in the year 2047 for various narcotics and firearms offenses. He was sentenced as a career—he received the career offender enhancement at sentencing. He was sentenced to concurrent terms on the narcotics counts of—well, no one was a firearm count— a total of 300 months, and then another 60 months consecutive for count two, which was the possession of a firearm and furtherance of a drug trafficking offense. Mr. Rowe was appointed a federal public defender. He was a seasoned and experienced public defender. Let me ask you this just maybe to advance the tape a little bit. Does the crux of the issue here really boil down to whether the purchase crime under Florida law is a possession crime under federal law? That is correct. And in Conage 1, this court referred a certified question to the Supreme Court of Florida, and the Supreme Court of Florida answered the question. And then when it came back, Conage 2, the second Conage opinion, this court determined that the Florida Supreme Court said that possession indeed is trafficking and is a serious drug offense under Section 893 of the Florida statutes. And so how is that not conclusive? Well, we have the Shannon case from this court. But pre-Conage, right? Correct. Yeah. And it was authored by Judge Marquette, and it was concurring opinion by Judge Marcus, and there was a visiting Judge Restani from the International Court of Trade, I believe. And they determined that his sentence should be reversed and remanded, and they were based upon the categorical approach and or modified categorical approach of the offenses. Now, in the Florida Supreme Court Conage decision, reading it, it's actually rather convoluted how they got to the decision that mere possession of a certain quantity of narcotics would be a serious drug offense. And then this court, relying on that, entered its Conage 2 decision saying that, yes, it was a serious drug offense. Yes, sir. Well, that was very observant. All I did was inhale. I appreciate you waiting. No, you're good. You're good. You're good. I actually did have a question. Thank you. But so, I mean, I guess as I read the question that the Florida Supreme Court answered, they said essentially does a completed purchase for purposes of conviction under 893.135.1 require some form of possession, and they said yes. So I think I don't understand why that isn't conclusive, Shannon or no Shannon. Well, it seems that there probably should be a decision from this court and bank to overrule a decision of a previous panel on the same issue. Well, I guess I thought that our prior panel precedent rule allowed when an earlier court here, for us then to revisit the first case on the basis of the new state law decision. Well, this court's precedent says the Supreme Court, and it has been interpreted in case law as the U.S. Supreme Court and or a state Supreme Court. Yeah, I guess the case I'm looking at is this case United States v. Clark. If the United States Supreme Court or the Florida courts cast doubt on our interpretation of state law, panelists are free to reinterpret state law in light of the new precedent. That is the ruling. I was thinking that perhaps should this decision go unfavorably for Mr. Rowe, which it may well, that perhaps we would request a re-hearing in bank, but that needs to be seen. Let me ask you this, which is sort of a nitpicky legal question, I guess. So Shannon interpreted the career offender provision. In this case, it's about the career offender provision, right? Yeah. Connage, the Florida Supreme Court was interpreting state law, and then our decision in Connage was about the Armed Career Criminal Act, right? Correct. Yeah, so just play that out. Is this a situation where the Florida Supreme Court has changed the interpretation of state law, or was Shannon really more about federal law than state law? Shannon was about federal law. And the Armed Career Criminal Enhancement, although it was found to be applicable, was not applied by the government in this case because Mr. Rowe had not been apparently advised of his risk of being sentenced pursuant to the Armed Career Criminal Act. But the district judge found that it would be applicable, but it was not requested by the government, so it was not imposed. This was a career offender enhanced sentence. Right. I guess just to go back to Shannon and just to try to understand Shannon a little bit, I mean, Shannon says, look, as a matter of federal law, we're determining that this state law crime does not meet one of the three strikes for the career offender provision. And I guess my question is, how much of that is a determination of federal law that we're sort of bound by and that we would have to go on back to overrule? And how much of that is a determination of state law where, look, if the state law changes, then the state law changes and we just change ourselves based on the state law? Well, I'm not sure that the state law changed. It was a statement of what the Florida Supreme Court said it considers to be a serious drug felony. Well, I mean, maybe I'm wrong about that, but I thought in Connage, the Florida Supreme Court's decision wasn't about the ACCA. In Connage, the Florida Supreme Court's decision was about the elements that were necessary to establish the crime under Florida law. That is correct. There's a distinction between the means of committing a particular offense and the elements of the offense. Right. So to go back to my question is, so the Florida Supreme Court says this is how we interpret the elements required to establish this offense under Florida law. That has implications for federal questions under the ACCA and under the career offender enhancement. But does that necessarily control or change our case law with respect to those federal questions? And I would submit it does not and should not unless and until there is an in-bank decision overruling or changing Shannon. Yes, but our case law about the federal rule or the federal conclusion is that if possession is not required, this is the result. What we now know is possession is required. So we're not overruling our prior decision. We're simply recognizing that the Florida Supreme Court's clarification changes one of the premises and therefore it no longer fits the situation, aren't we? Well, my understanding of the government's argument in their brief is that it did, perhaps overrule is the wrong word, but it said that it did abrogate the Shannon decision. And I'm not sure that that's appropriate. I'm not concerned so much with what the government says in its brief is whether, in fact, our law has been established for what would be the result if possession is required in this situation instead of possession isn't required, which is what we thought in the prior decision. That's correct. And as I understand the categorical approach and or modified categorical approach is still in effect and is still the standard to be used. That is my understanding. I may be wrong. And I would submit that you should consider that this sentence until 2047 is a very – you have a person who's uneducated. He did not have a high school diploma. All of his prior involvement with criminal justice systems was in the state of Florida, not in the federal court. And he really did not – even though he answered all the right questions during the plea colloquy, he said, yes, his lawyer advised him and, yes, he read the indictment and, yes, he understood the charges. And yet, apparently, when he came to the realization that – and when he already had said yes to all those questions and the plea was recommended to be accepted by the magistrate and was accepted by the district court, he realized that he had probably made a mistake and he wanted to rectify that. And, of course, the court struck all of his pro se motions. The public defender wouldn't file them. They had apparently a very contentious argument and the public defender was permitted to withdraw and a new counsel was appointed for appeal. And the new counsel also was a very seasoned criminal defense lawyer from the CJA panel. And all of his objections to the sentencing were overruled. Okay. So I see that your time has expired. You can – you've got four minutes remaining for rebuttal. Thank you. Let's hear from the government. Good morning. May it please the Court, Jordan New here on behalf of the United States. The government's position in this matter is that Shannon is no longer binding on this court insofar as the question about whether or not a Florida conviction for trafficking in cocaine can qualify as a career offender predicate as a controlled substance offense. I think where it makes the most sense for me to jump in is to answer Judge Brasher's question. I think, Shannon, if you read it, the answer is it's both, right? It has to apply federal law on the federal question of what is required to meet this federal definition, this guideline provision of what is a controlled substance offense. But with so many things, when you apply the categorical approach, that federal standard, that federal question is going to turn on a question of state law. So Shannon begins by applying the federal provision, the federal question of what do we have to find to conclude that something is a controlled substance offense. And as part of that, it has to consider the question of, well, what does Florida law, how does it define the element of purchase? And Shannon came to the erroneous conclusion in that case based on precedent from intermediate appellate courts that didn't directly answer the question but that it found informative. And it explicitly rejected the government's argument that possession, that an individual could be guilty of purchase under the Florida trafficking statute without having possessed those drugs and possessed those drugs within the meaning of the controlled substance offense definition. And we know now from the Supreme Court's answer in Connage that that is incorrect, that the Florida law, Florida term purchase is going to encompass possession as that term is understood in federal law and it's going to encompass constructive possession. So I think that completely, that undermines that entire portion of Shannon. And if Shannon had been decided with the benefit of Connage and the benefit of the Supreme Court's answer to that question, the government's position is that it would have come to the completely opposite conclusion that this is a controlled substance offense. And I think this court can look beyond just Shannon. It's not Shannon, it was preceded by a case called Madeira Madeira that applied and explained what this definition is all about. And I think what's interesting about Madeira Madeira is that it emphasized we're not looking about focusing on whether the words match. The federal question here isn't even necessarily defined by the elements. It's a conduct-based test of whether the state statute prohibits certain types of conduct. And so within that prism, if you look at the question that way and with the benefit of the recent Florida Supreme Court decision in Connage, then yes. Obviously, the Florida Supreme Court has told us that the act of purchase is going to require the federal concept of at least constructive possession. So the government's position is the possession aspect of this has been answered by Connage. Now, there is a related question, which I think this court's precedent already also resolves, about the controlled substance definition doesn't just cover possession. It's got to be possession with the intent to distribute. And so thankfully, this court already has a lot of precedent on this question about whether or not there has to be a formalized element in state law of the intent to distribute. And Madeira Madeira establishes that it doesn't have to be an element, that it's enough for the state law to infer an intent to distribute based on the quantity of the drugs. And then we know from James that that presumption or that inference applies to Florida's trafficking statute. So the government's position on this is that if you read Connage, Madeira, Madeira together with James, the only answer, the only conclusion that this court can come to is that the district court in this case properly applied the career offender enhancement because a Florida conviction for trafficking in cocaine is going to categorically require possession with the intent to distribute the controlled substance. And if the court has no further questions about anything that I've said, we're happy to rest on our brief in regard to... Let me ask you just, I mean, just to make sure I sort of understand your position. So you're saying in these sort of ACCA or career offender enhancement cases, there are really two questions posed. One is a federal question, which is about how you interpret that statute or that guideline. And then the second question, which might be federal or might be state, depending on the crime you're analyzing, is what are the elements of that crime, right? Absolutely. What is the conduct in this case prohibited by the statute? And that's going to be the state question. But there is always going to be an overarching federal question of how, what's the standard? What's the law to apply? And that's typically how these categorical approaches... Right. So with respect to the federal question, the sort of the correct interpretation of the guideline or of the ACCA, we would sort of do our normal kind of prior precedent rule stuff with that. But when the question is about the elements of the state crime, we would just be bound by whatever the state Supreme Court said, even if we had said the opposite thing previously. Yes, exactly. And it's that part of Shannon in particular. It was like a very particular paragraph where it completely rejects the government's argument that you can put the possession as part of purchase. We think that's the part of Shannon that no longer bides this court in light of Conage. Here's the question I have, which may just be a theoretical question because it may not matter for this case, but how confident are you that those are separate questions that can be disentangled in our precedent? Because when I look at our ACCA cases in particular, oftentimes it seems like we are saying we interpret this federal law to make this state crime whatever the element would be, whatever the strike would be. In my experience, the way that I think about these, because I do a lot of categorical approach cases and the way I organize it out in my mind, is that there are distinct separate questions about what is the interpretation of this federal provision and then how does it apply. And I guess there can be a lot of overlap when you get in the trenches and you're working in the mess of a question and how it applies to a particular statutory provision. But I do think there is a separate federal analytical question about how do we interpret, what do these terms mean, what does this provision mean? Okay. Implicit, I suppose, in your briefing presentation, but not explicit, is that when the Florida Supreme Court says, regardless of what you thought before, maybe regardless of what it was before, we now interpret the statute to require possession. And an argument could have been made, but wasn't, that, well, that's fine now. But at the time he committed this crime, we already know from this court's interpretation and what the Florida interpretation was, it wasn't required. But the answer to that, I'm sure you would have told her, is that a judicial construction of a statute, the Supreme Court has said, is an authoritative statement of what the statute meant before as well as after the decision of the case given rise to the construction. The law has always been. It harkens back to the old pre-modern era interpretation of the law. The law is out there. You just got to find it. The fact you overlooked it one time doesn't mean it wasn't there all the time. And more on point, U.S. v. Fritz, one of our decisions from 2016, said when the Florida Supreme Court in Robinson interprets the robbery statute, it tells us what the statute always meant. I'm sure you thought that was so obvious that you didn't want to belabor it. Well, the government completely agrees with that. This comes up not infrequently in some of these categorical approach cases. And Fritz would have been the exact case that I would have cited for that proposition. I think it came up in Summers too, the aggravated assault litigation. The government's position is when the Florida Supreme Court announces what the terms of a Florida statute mean, it announces what it's always meant, and that this court has to, I mean, Florida Supreme Court is the final arbiter of matter of Florida law. So this court going forward has to listen to what it has said. That principle, interestingly enough, may be confined to statutory interpretation, excuse me, as opposed to constitutional interpretation and the theory, wayward or not, about the living constitution. Apparently when something's alive, it can change. It doesn't have to always have been the way. It ignores Scalia's statement that give me a dead constitution. That's what I can follow and interpret. But I'm sorry. No, you're welcome. You had some more time, so I thought I'd waste it. Let me ask you sort of the flip side, to address the inverse of this case. So in this case, the argument is that with these two questions, the Florida Supreme Court has changed the interpretation of Florida law, and then we would apply sort of existing federal law to that new interpretation. The flip side of that is the Supreme Court changes our interpretation of the ACCA, which has happened on a regular basis. I think if I'm understanding you right, if that federal law question changes, then we would not be bound by any of our precedent that have established that previous state laws are, you know, one of the strikes, right? So we would have to just do that analysis again because the federal law has changed. Absolutely. That's exactly it. And when something changes to the calculation, there's always going to be a chance that the conclusion is different. And here, with these two components, if either one of them changes, the government's position is that the court has to revisit. And as, like you said, it's not infrequent that we find ourselves reapplying what we, you know, state law, which seems to be settled to a new federal interpretation of a statute. Right. So just the fact that we've said at some point that, like, Florida assault was, you know, a crime of violence. If the Supreme Court then comes in and changes our interpretation of how we should analyze crime of violence, district courts couldn't just rely on our previous statements that assault under Florida law is a crime of violence. They'd have to do that analysis again under the new federal law. I would agree. And with, you know, there being nuances of how things certainly could apply. But if the question, really, if the analysis is entirely changed, then yes, I think we would be in agreement that the question basically becomes open one again. The standard, though, is a tough one when judging whether the Supreme Court decision means we don't have to follow a prior decision of this court. I believe what we've fairly consistently said is the Supreme Court decision has to undermine it to the point of abrogation. It can't just be, gosh, if we'd known about that at the time we decided the prior precedent, we would have probably gone the other way. The answer to, well, what about you should have gone the other way is en banc revue. And I think it really, in order to answer, accurately answer the question of whether or not you're bound, you really have to engage with not just the holding but the reasoning. You need to overlay the new law as announced by the Supreme Court to determine whether or not that reasoning, as it was applied in the previous case, would survive and stand in light of how the Supreme Court has answered the question. So it's not as cut and dry as the Supreme Court decided something that arguably could undermine something. I agree with you absolutely, Judge Carnes. It really has to be clear. And in my experience, sometimes that's not a very straightforward question. It really depends on not just the holding of the case but how it was reasoned as well. Okay, very well. Thank you so much. Ms. Lowenthal, you've got four minutes of rebuttal time remaining. I don't think I'll need four minutes, but may I suggest that if I have overlooked an argument, I apologize to the court and would ask that the court please consider what is the appropriate decision to make in this case. And I will rely on the briefs. Okay, very well. Thank you. Thank you so much. All right, so that case is submitted. We'll move to the second case, which is United States v. New York.